**TEXAS GENERAL INDEMNITY COM-
PANY, Appellant,**

v.

**Frank T. SHEFFIELD, Appellee.**

No. 223.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

March 12, 1969.

Rehearing Denied April 9, 1969.

Joel B. McCarty, Jr., Law Offices of Danny R. Edwards, Houston, for appellant.

David H. Burrow, Helm, Jones & Pletcher, Houston, for appellee.

TUNKS, Chief Justice.

This is a workmen's compensation case. The appellee, Frank T. Sheffield, a truck driver for Herrin Petroleum Transport Corporation, fell a distance of ten to fifteen feet from a gasoline loading rack on August 4, 1966. The transverse processes of his third, fourth and fifth lumbar vertebrae were fractured and his shoulder was injured. He was confined to a hospital for about four weeks where he was treated by Dr. Donald H. Nowlin, an orthopedic surgeon. On December 1, 1966, Dr. Nowlin released him to return to work and he did return to the same employment on December 5, 1966. The appellant, Texas General Indemnity Company, compensation carrier for Herrin, paid him compensation at the rate of $35.00 per week until he returned to work, paid his hospital bill and paid Dr. Nowlin's bill. He continued to work for Herrin until he was discharged on March 21, 1967, after filing his suit for compensation. Since that date he has worked for various employers. In the trial court the jury found that his August 4, 1966 injury was a producing cause of total and permanent incapacity. The jury also found that a previous injury was not the sole producing cause of such incapacity. The carrier has appealed from a judgment for the plaintiff on that verdict.

The evidence showed that Sheffield had suffered an earlier injury, on March 13, 1958, while he was a truck driver for J. H. Rose Truck Line, Inc. He had filed suit for workmen's compensation for incapacity produced by that earlier injury. His petition filed in the earlier suit described his injuries as follows:

"* * * severe, painful and permanent injuries, bruises and fractures to his back, shoulders, neck, hips, legs and to his body in general also severe, permanent and painful injuries to his nerves, bones, blood vessels, muscles, ligaments, tendons and nerves associated therewith the described parts of the body that were injured."

He had alleged in that petition that his injuries, so described, were a producing cause of total and permanent disability, or, alternatively, of temporary total disability followed by a period of partial disability.

When the appellee's deposition was taken in this case he told of his earlier injury in response to questions by the attorney for the appellant. In the deposition he described the 1958 injury as an injury to his neck, saying that he did not then hurt his back or any other part of his body. When the appellee testified from the stand in this case, he said, in response to questions from his attorney, that the pain from the 1958 injury extended into the middle part of his back and continued to bother him for a year and a half, but that he was never hospitalized. On cross-examination he testified that following the 1958 accident he experienced a numbness in his left leg which also continued for about a year and a half.

After his release by Dr. Nowlin the appellee was examined and treated by Dr. James Oates, a medical doctor specializing in physical medicine and rehabilitation, and was examined by Dr. Alexander Gol, a neuro-surgeon. He did not tell either of those doctors of his 1958 injury. Pre-trial oral depositions of both of those doctors were taken. In the taking of those depositions it was agreed that objections could be made at the time of the trial.

In his deposition Dr. Oates expressed the opinion that the appellee had nerve root damage in his low back of such character as to permanently disable him from the performance of the tasks of a working man and that such disability was caused by the August 4, 1966 injury. The testimony of Dr. Gol in his deposition tended to confirm Dr. Oates' diagnosis but expressed no opinion as to causation. Each doctor testi-

fied that in making his diagnosis he relied on the history given him by the appellee and Dr. Oates testified that in arriving at his opinion as to causation, he again relied on that history.

In the trial, when appellee's attorney started to offer testimony from Dr. Oates' deposition, the appellant objected to its being received and moved to strike the deposition in its entirety because Dr. Oates had testified that, in making his diagnosis and forming his opinion as to causation, he had relied on the history given him by the patient, which history was inaccurate because it did not include the 1958 injury and its symptoms. The trial court overruled the objection and the motion. The appellant was given a "running objection" to each individual question in the deposition. Similar objections and rulings were made as to Dr. Gol's deposition. The appellant has stated points of error as to those rulings of the trial court. We overrule those points of error.

It is obvious that Dr. Oates could not have attributed the appellee's disability to the August 4, 1966 accident if he had not been told of that accident. To this extent he must certainly have relied on the history given him in reaching his conclusion as to causation. However, it is further obvious that the doctor based both his diagnosis and his opinion as to causation on much more than the history. He was asked by counsel for appellant, if his decision to run electroencephlographic tests was based on the patient's history as to his complaints. He answered,

"Answer: Only partially. My clinical examination included not only a history of his complaints, it also included checking his lower extremities for signs of any nerve damage to them."

He then listed a number of objective findings made by him including a difference in the size of appellee's legs, quite active knee jerks with the right one more active than the left, the ankle jerks were less active than usual and the left ankle less active

that the right, less than normal strength in several of the leg and foot muscles tested and some differences between the right and left muscles insofar as strength was concerned, atrophy of several muscles in the appellee's legs, and a positive response to the straight leg raising test. In addition, electroencephlographic tests were positive in several respects.

Dr. Oates' testimony by deposition also indicates that even if the appellee had told him of the 1958 injury and its symptoms he would have reached the same conclusion as to the cause of his disability. Appellant's counsel asked him,

"Question: Would it, then, be true to say if Mr. Sheffield had a back injury several years before this particular injury, this could have caused the nerve root damage?"

He answered:

"Answer: It could be, but x-rays of the back would quickly reveal wear and tear changes from arthritis were causing nerve root damage. These spur formations, the spurs pressing against the areas where nerve roots come out in the back, and I have seen no x-ray reports to indicate this in his back."

The appellee's counsel asked the doctor a hypothetical question as to his opinion on causation, assuming a prior accidental injury in 1956 or 1957 (the appellee had stated on his deposition that his prior injury had occurred about 1956 or 1957), and assuming appellee's subsequent work history, the doctor replied,

"Answer: I would rule it out; that is, I wouldn't think the accident of 1956 had any causation of the difficulties which I found in Mr. Sheffield."

The situation with reference to the testimony of Dr. Gol was somewhat similar except that Dr. Gol did not express any opinion as to the causation of the appellee's disability.

■ The question of admisibility of expert testimony is addressed to the discretion of the trial judge. Liberty Universal Ins. Co. v. Gill, Tex.Civ.App., 401 S.W.2d 339, writ ref., n. r. e.; McCormick and Ray, Texas Law of Evidence, Vol. II, p. 235, Sec. 1401. Under the facts set forth above we are of the opinion that the trial court properly overruled the objections to the opinion testimony of the doctors and overruled the appellant's motion to strike the depositions. See Aetna Cas. & Sur. Co. v. Scruggs, Tex.Civ.App., 413 S.W.2d 416, no writ hist.

By another point of error the appellant contends that the trial court erred in refusing to permit the introduction into evidence of the petition filed by appellee in the compensation case based upon the 1958 injury.

There were two parts of that petition which were offered in evidence by appellant and which were excluded by the trial court on objection of the appellee. The first part was the description of the appellant's injuries and the second part was the allegation as to the nature and extent of the disability produced by those injuries.

■ The appellee testified on both direct and cross-examination that he had sustained the 1958 injury. On cross-examination he admitted that the 1958 injury was as described in that portion of the prior petition quoted above. In fact, it is apparent that counsel for appellant in eliciting that admission used those allegations in framing the questions posed to the appellee. There was no allegation in appellee's petition to the effect that he had sustained no previous injury, rather he alleged that if he had any prior infirmity, it was not disabling. Thus, there was no inconsistency between the allegations as to injury in the former petition and either the testimony or the pleadings in this case. For this reason the former allegations as to the former injuries were inadmissible.

We now examine the propriety of the trial court's ruling excluding that portion of the former petition alleging the incapacity of which the 1958 injury was a producing cause. The plaintiff alleged, in the prior suit, that the 1958 injury was a producing cause of total and permanent incapacity or, alternatively, a period of total incapacity followed by a period of partial incapacity.

■ It has been held that an allegation in a petition to the effect that an accidental injury was a producing cause of total and permanent incapacity is merely a "prediction" and not such a positive statement of fact as to be admissible in another case either for impeachment or as proof of the truth of the matter stated. Hartford Accident & Indemnity Co. v. McCardell, Tex. Sup.Ct., 369 S.W.2d 331; Beseda v. Transamerica Ins. Co., Tex.Civ.App., 414 S.W. 2d 742, writ ref., n. r. e. There may be a situation, however, wherein such an allegation may be construed as a factual statement to the effect that the plaintiff has sustained total incapacity up until the time of the filing of the petition. As such, it may be evidentiary in a suit based upon a subsequent injury. This occurs when the plaintiff testifies that his disability from the former injury lasted but a short time and the petition alleging such disability was filed after the date on which the plaintiff said his disability from the former injury had ended. Such was the case as to one of the prior petitions held admissible in the McCardell case above cited. However, this plaintiff's petition relating to the 1958 accident was filed on June 14, 1958. The plaintiff here did not testify that his disability had ended before that date. In fact, he testified that his symptoms from that injury continued for one and one-half years. Thus, the court's holding in the McCardell case that the former petition there in question was admissible is not applicable here.

■ It is also to be noted that there were two alternative and inconsistent allegations in the plaintiff's former petition as to the nature of the incapacity produced by the 1958 injury. Such pleading is per-

mitted by Rule 48, Texas Rules of Civil Procedure. An alternative statement in a pleading in conflict with other allegations in the same pleading does not constitute an admission. Dallas Ry. & Terminal Co. v. Hendricks, (Tex.Comm.App., opinion adopted), 140 Tex. 93, 166 S.W.2d 116; Houston, E. & W. T. Ry. Co. v. DeWalt, 96 Tex. 121, 70 S.W. 531; San Antonio Water Supply Co. v. Castle, Tex.Civ.App., 199 S.W. 300, no writ hist.

In this case the plaintiff's 1958 pleading might be construed as a positive allegation of some period of total incapacity, but not for any definite period of time. As such it is not inconsistent with either the plaintiff's pleading in this case or his testimony.

The trial court properly excluded the plaintiff's former petition.

The appellant has also presented points of error as to the existence, sufficiency and weight of the evidence. We have already discussed the medical testimony in support of the jury finding. Other testimony offered by the plaintiff included his own testimony, that of his wife, fellow employees and the man for whom he had worked after his injury. They testified as to their observations of his physical activities. In behalf of the defendant's position the doctor who had treated plaintiff after his injuries testified that the plaintiff did not have any disability when discharged by him on December 1, 1966. A doctor who had given the plaintiff a pre-employment examination after his injury testified that the plaintiff did not have any disability at the time of such examination. Evidence was offered showing the plaintiff's work record and his earinings after the injury which was the subject matter of this law suit. We have examined that testimony and, without detailing it, find that it raised the issues on which the jury found in favor of the plaintiff, that it was sufficient to support such findings and that such findings were not so against the weight of the evidence as to be clearly wrong.

Appellant's fifth point of error is in the following language:

"The trial court erred in not submitting the special issues in the form requested by the appellant and in modifying same to the form in which they were submitted to the jury."

 That point of error is overruled. It does not meet the requirements of Rule 418, T.R.C.P. Furthermore, the case was properly submitted to the jury by the trial court's charge.

The judgment of the trial court is affirmed.